T.C. Memo. 2006-4

UNITED STATES TAX COURT

JUDITH A. MADDEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17104-04.                    Filed January 5, 2006.

Donald L. Herskovitz, for petitioner.

Michele A. Yates, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  Respondent determined that petitioner is not
entitled to relief from joint liability under section 6015(f)[1]
for $141,302 of unpaid Federal income tax for 2000 that

_____

[1]Unless otherwise specified, section references are to the
Internal Revenue Code.

petitioner reported on a joint return filed with her husband, David R. Sturges. Petitioner filed a petition under section 6015(e)(1) seeking review of respondent's determination. We must decide whether respondent abused his discretion in denying petitioner such relief.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioner resided in Carlisle, Massachusetts. Petitioner and Mr. Sturges have been married since 1977. Mr. Sturges has never abused petitioner. Petitioner and Mr. Sturges have two daughters. The younger daughter graduated from high school in May 2000 and began college that September.

Petitioner has a bachelor's degree in art history and a master's degree in biology. Petitioner is 64 years old and unemployed.

Petitioner was not employed outside the home for most years after she married Mr. Sturges. She had no earnings subject to withholding for Social Security from 1980 to 1985, 1991 to 1994, and 1998 to the present. She had earnings subject to withholding for Social Security of $3,084 in 1986, $2,060 in 1987, $129 in

1989, $6,885 in 1990, $2,795 in 1995, $4,419 in 1996 and $32,796 in 1997.

During 2000, petitioner was self-employed as a systems developer, operating under the name of Nikken Distributorship. In 2000, Nikken Distributorship had gross receipts of $500 and incurred $450 of business expenses which petitioner reported on Schedule C, Profit or Loss from Business, of the joint return.

Before and for part of 2000, Mr. Sturges worked for Cisco Systems Sales & Services, Inc. (Cisco), as a software engineer. Mr. Sturges terminated his employment with Cisco in 2000.

Mr. Sturges began working as a software engineer for Tiburon Networks, Inc. (Tiburon), after he left Cisco. Tiburon was an affiliate of Nortel Networks, a Canadian telecommunications company. Tiburon paid Mr. Sturges wages of $31,286.40 in 2000. Tiburon also gave Mr. Sturges options to purchase 192,000 shares of Tiburon stock over a 3-year period.

During his employment with Cisco, Mr. Sturges acquired stock options to purchase Cisco stock. From 1997 until he terminated his employment in 2000, Mr. Sturges exercised a small number of options each month. When Mr. Sturges left Cisco, Cisco required him to exercise (or lose) his remaining Cisco stock options.

Petitioner and Mr. Sturges engaged Paine Webber, a professional financial advisement firm, to assist and advise them with respect to the exercise of the Cisco stock options. Mr.

Sturges exercised all of the Cisco stock options. He sold some of the Cisco stock acquired from the exercise of the stock options and retained the rest in a Paine Webber joint margin account. Petitioner and Mr. Sturges believed the retained Cisco stock would be a conservative investment that would increase in value. At the time the options were exercised, Cisco stock was selling for approximately $64 per share.

A portion of the proceeds from the sale of the Cisco stock acquired from the exercise of the stock options was invested in stock of biotechnology companies. The biotechnology stock was held in a separate Paine Webber joint account.

The exercise of the Cisco stock options generated $1,596,461.44 of employment income to Mr. Sturges. Petitioner informed Paine Webber that she wanted to put aside sufficient funds to pay the tax liability resulting from the exercise of the Cisco stock options.

Petitioner and Mr. Sturges withdrew $68,000 from their joint Paine Webber account in September 2000. They used the money for home improvements and their daughter's tuition.

Cisco issued Mr. Sturges a Form W-2, Wage and Tax Statement, for 2000 reporting wages of $1,683,886.77 that included Mr. Sturges's income from his exercise of the stock options. The Form W-2 reported that $464,291.46 was withheld for Federal income taxes.

Petitioner and Mr. Sturges received a combined income of $1,714,931 during 2000.

The price of Cisco stock declined, and by late December 2000 Paine Webber informed petitioner and Mr. Sturges that the price of Cisco shares had dropped to $34 or $35, precipitating a margin call. Petitioner and Mr. Sturges sold some of the Cisco shares to pay the margin call. Petitioner and Mr. Sturges held the remaining Cisco shares. Petitioner and Mr. Sturges lost most of the funds invested in the stock.

Petitioner and Mr. Sturgis own a four-bedroom, 2½-bath residence. Before April 2001, a mortgage on the residence dated December 15, 1998, secured a $377,550 debt. In April 2001, petitioner and Mr. Sturges refinanced the residence. The new mortgage secured a debt of $358,000.

In April 2001, petitioner's accountant informed petitioner that her and Mr. Sturges's 2000 Federal income tax would exceed the amount withheld by Cisco by approximately $141,000. Petitioner called both Cisco and Paine Webber because she thought there was an error regarding the amount withheld and/or set aside to pay taxes.

Petitioner and Mr. Sturges filed for an automatic extension to August 15, 2001, to file their 2000 return. They filed a joint Form 1040, U.S. Individual Income Tax Return, for 2000 on August 15, 2001. On the 2000 return, they reported a total tax

of $614,205, payments of $472,903, and $141,302 due with the return. Petitioner and Mr. Sturges did not remit the $141,302 with the return.  Mr. Sturges attached to the return a letter advising the Internal Revenue Service (IRS) that he would be filing a Form 656, Offer in Compromise, and a Form 433-A, Collection Information Statement for Individuals.

Petitioner and Mr. Sturges attached to the joint return a document entitled "Section 83(b) Election" pursuant to which Mr. Sturges elected to include the value of 190,167 shares of Tiburon restricted stock in his gross income for 2000, the year the stock was transferred to him.  The document stated that each share had a value of 30 cents on October 23, 2000, the date the shares were transferred to him, and that Mr. Sturges had paid $57,050.10 for the stock.

By August 2001, petitioner and Mr. Sturges had approximately $13,000 remaining in their Paine Webber accounts.  When petitioner signed the 2000 return, she and Mr. Sturges did not have $141,302 to pay the tax shown as owed on the return.  She discussed the unpaid tax liability with Mr. Sturges.  Mr. Sturges told petitioner that he did not have the money to pay the outstanding tax because he had "entrusted" all the funds to Paine Webber but that he had enough Tiburon options to cover the tax liability.

Petitioner and Mr. Sturges filed an offer-in-compromise in an attempt to compromise their 2000 tax liability for $1 on October 22, 2001. On January 17, 2002, petitioner informed the revenue officer who was considering the offer-in-compromise that she had unsuccessfully tried to refinance the residence in order to raise the money to pay the tax. On January 23, 2002, with the offer-in-compromise still under consideration, petitioner and Mr. Sturges borrowed $115,000, increasing the mortgage debt to $477,000. They used the borrowed funds to pay the debt on their credit cards and their daughter's college tuition. The IRS rejected the offer-in-compromise on or about April 23, 2002.

On June 19, 2002, petitioner filed a Form 8857, Request for Innocent Spouse Relief, and petitioner and Mr. Sturges filed separate offers in compromise offering to compromise their 2000 tax liability for $200 and $1,000, respectively. The offers in compromise were rejected on August 19, 2002.

On August 9, 2002, respondent sent petitioner a letter acknowledging receipt of petitioner's request for innocent spouse relief and providing information on the claim process. Respondent included Publication 971, Innocent Spouse Relief, which explained the requirements for relief in detail, and a questionnaire to be completed by petitioner. The letter also informed petitioner that respondent was required to inform Mr. Sturges that petitioner had requested relief and that a separate

questionnaire was being sent to Mr. Sturges. Petitioner and Mr. Sturges completed their respective questionnaires and returned them to respondent.

On November 18, 2002, petitioner and Mr. Sturges filed another offer-in-compromise offering to compromise their 2000 tax liability for $1,000. That offer was rejected on January 15, 2003.

On February 19, 2003, respondent issued petitioner a preliminary determination letter informing her that respondent was denying her relief from liability because she had not established (1) that she believed at the time she signed the joint return that the taxes would be paid or (2) that she would suffer economic hardship. Petitioner appealed that determination to the IRS Appeals Office.

In April 2003, petitioner and Mr. Sturges borrowed an additional $150,000 that was secured by a second mortgage on the residence. They used the borrowed funds to pay the debt on their credit cards and their daughter's college tuition.

The Appeals Officer assigned to petitioner's request sent petitioner an initial contact letter on July 11, 2003. The Appeals Officer sent a notice to Mr. Sturges on August 1, 2003. The Appeals Officer corresponded with petitioner and her representative over the next several months. In June 2004, the

Appeals Officer issued petitioner a final notice of determination denying her relief from liability.

Petitioner and Mr. Sturges own land in Colorado, and they are income beneficiaries of a charitable remainder trust. Petitioner and Mr. Sturges created and funded the charitable remainder trust in December 1999. Petitioner and Mr. Sturges are entitled to 5 percent of the value of the trust property annually. The remainder goes to the "education system" of the Commonwealth of Massachusetts. The record does not contain any information as to the amount contributed to the charitable remainder trust in 1999.

Petitioner owns a three-bedroom, single-bath house in mid-State New York that she inherited from her parents. Petitioner rents the property for an amount equal to the expenses related to maintaining the property. There is no mortgage on the property.

Mr. Sturges has earned approximately $115,000 each year for the past several years.

Petitioner and Mr. Sturges have filed Federal income tax returns and paid all taxes owed for all years since 2000.

### OPINION

Petitioner requested relief under section 6015(f) from liability for the payment of the tax reported on the 2000 joint return but not paid when the return was filed. Respondent

determined that petitioner was not entitled to the requested relief.

If a taxpayer's request for relief under section 6015(f) is denied, the taxpayer may petition this Court (pursuant to section 6015(e)(1)) for a review of the determination. Ewing v. Commissioner, 118 T.C. 494, 497-507 (2002). To prevail, petitioner must prove that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion. See Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 291-292 (2000).

Section 6015(f) provides:

> SEC. 6015(f). Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

In the instant case, the parties agree that petitioner is not entitled to relief under section 6015(b) or (c), and therefore section 6015(f)(2) is satisfied. They disagree over whether petitioner is entitled to relief under section 6015(f)(1).

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2000-15, 2000-1 C.B. 447, that are to be used in determining whether it would be inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency. The requesting spouse must satisfy seven conditions (threshold conditions) before the Commissioner will consider a request for relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448. Respondent agrees that in this case those threshold conditions are satisfied.

Where, as here, the requesting spouse satisfies the threshold conditions, Rev. Proc. 2000-15, sec. 4.02(1), 2000-1 C.B. at 448, sets forth the circumstances under which relief under section 6015(f) will ordinarily be granted in a case where a liability is reported in a joint return but not paid. Relief under section 6015(f) will be granted for an unpaid tax liability reported on a joint return if all of the following elements are satisfied:

> (a) At the time relief is requested, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse * * *;

> (b) At the time the return was signed, the requesting spouse had no knowledge or reason to know that the tax would not be paid. * * *; and

> (c) The requesting spouse will suffer economic hardship if relief is not granted. * * *

Petitioner does not satisfy all of the elements because she remains married to, and is not separated from, Mr. Sturges. Consequently, she does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02(1).

In cases where the threshold conditions have been satisfied but the requesting spouse does not qualify for relief under Rev. Proc. 2000-15, sec. 4.02(1), equitable relief may be granted under section 6015(f) if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable. Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449, lists positive and negative factors that the Commissioner will take into account in determining whether to grant equitable relief under section 6015(f). Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448-449, lists the following six factors as weighing in favor of granting relief for an unpaid liability: (1) The requesting spouse is separated or divorced from the nonrequesting spouse; (2) the requesting spouse will suffer economic hardship if relief is denied; (3) the requesting spouse was abused by the nonrequesting spouse; (4) the requesting spouse did not know or have reason to know at the time the return was signed that the reported liability would be unpaid; (5) the nonrequesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability; and (6) the unpaid liability is

attributable to the nonrequesting spouse.  Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, lists the following six factors as weighing against granting relief for an unpaid liability:  (1) The unpaid liability is attributable to the requesting spouse; (2) the requesting spouse knew or had reason to know at the time the return was signed that the reported liability would be unpaid; (3) the requesting spouse significantly benefited (beyond normal support) from the unpaid liability; (4) the requesting spouse will not suffer economic hardship if relief is denied; (5) the requesting spouse has not made a good faith effort to comply with Federal income tax laws in the tax years following the tax year to which the request for relief relates; and (6) the requesting spouse has a legal obligation pursuant to a divorce decree or agreement to pay the unpaid liability.  In addition, Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448, states:  "No single factor will be determinative of whether equitable relief will or will not be granted in any particular case.  Rather, all factors will be considered and weighed appropriately."

Furthermore, the list of aforementioned factors is not intended to be exhaustive.  In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

In accordance with the above, we will consider each of the factors enumerated in Rev. Proc. 2000-15, sec. 4.03.  We will also consider whether any additional facts alleged by the parties affect the analysis of whether respondent abused his discretion in denying petitioner equitable relief under section 6015(f).

A.   Neutral Factors

We consider many of the factors to be neutral, weighing neither in favor of nor against granting petitioner relief.

1.   Marital Status

Petitioner is still married and living with Mr. Sturges. Consequently, this factor does not apply.  See Ewing v. Commissioner, 122 T.C. 32, 46 (2004).

2.   Economic Hardship

An analysis of economic hardship under Rev. Proc. 2000-15, supra, is conducted using rules similar to those under section 301.6343-1(b)(4), Proced. & Admin. Regs., and focuses on the requesting spouse's inability to pay reasonable basic living expenses.  Rev. Proc. 2000-15, sec. 4.02(1)(c).  Section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides that the Commissioner will evaluate a requesting spouse's claim of economic hardship by considering any information offered by the requesting spouse that is relevant to the determination, including, but not limited to, the amount reasonably necessary for basic living expenses and the requesting spouse's income,

assets and liabilities, age, ability to earn, and responsibility for dependents.

Petitioner is 64 years of age and has been unemployed for many years. Because Massachusetts is not a community property State, Cooley v. Commissioner, 27 B.T.A. 986, 988 (1933), affd. 75 F.2d 188 (1st Cir. 1935); Richman v. Richman, 555 N.E.2d 243, 664 (Mass. App. Ct. 1990), petitioner is not the owner of any of Mr. Sturges's earnings. Her only income is her share of the income (the amount of which is unknown) from the charitable remainder trust. Petitioner and Mr. Sturges are still married, however, and Mr. Sturges continues to support petitioner.

Petitioner owns the New York house she inherited from her parents and has assets that she owns jointly with Mr. Sturges; i.e., the residence and the land in Colorado. Those assets are available for payment of the tax liability.

Petitioner asserts that since 2001 her family's expenses have exceeded their income by $3,500 each month. She testified that she has used her credit cards to make up the difference and that at the time of the trial she had $30,000 of credit card debt. She testified that at the time of the trial there was only $15,000 remaining in the charitable remainder trust.

Petitioner testified that a four-bedroom, 2½-bath house in her neighborhood sold for approximately $940,000 in April or May 2005. She asserts that her residence, subject to mortgages

totaling $620,000, has a value between $850,000 and $950,000. Petitioner also testified that she placed the New York property on the market for $82,000 during the summer and fall of 2001, but she did not receive any firm offers. Petitioner claims that her net worth is approximately $50,000.

Petitioner did not produce bank records, property tax assessments, real estate appraisals, the listing agreement for the New York property, or any other evidence to support her testimony. Neither Mr. Sturges nor any representative from Paine Webber or Cisco testified at the trial. The only record from Paine Webber is a one-page statement for August 2001 that shows petitioner and Mr. Sturges having an account with a value of $13,439.34. Petitioner offered no evidence other than her own testimony that (1) there is only $15,000 remaining in the charitable remainder trust, (2) monthly expenses exceed Mr. Sturges's monthly income by $3,500, (3) petitioner and Mr. Sturges's residence has a value of less than $950,000, (4) the unencumbered New York house has a value of less than $82,000, and (4) the land in Colorado has a value of $20,000. In the absence of corroborating evidence, we are not required to accept, and do not accept, petitioner's self-serving testimony. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Consequently, we conclude that petitioner has failed to carry her burden of proving that requiring her to pay the

liabilities from which she seeks relief would result in economic hardship within the meaning of section 301.6343-1(b)(4), Proced. & Admin. Regs. Because petitioner has failed to establish that she will suffer economic hardship, we conclude that this factor does not weigh in favor of granting her relief.

The fact that petitioner has failed to establish that she will suffer economic hardship, however, does not necessarily establish that she will not suffer economic hardship. It is not clear from the record that petitioner will not suffer economic hardship if she is not relieved of her liability to pay the tax. Consequently, this factor does not weigh against granting petitioner relief. Economic hardship is a neutral factor in this case.

### 3. Abuse by Nonrequesting Spouse

Petitioner was not abused by Mr. Sturges, and she does not assert that Mr. Sturges coerced her into executing the 2000 joint return. This factor does not weigh in favor of granting relief to petitioner. See Ewing v. Commissioner, 122 T.C. at 46; Washington v. Commissioner, 120 T.C. 137, 149 (2003).

### 4. Requesting Spouse's or Nonrequesting Spouse's Legal Obligation

Because petitioner and Mr. Sturges are not separated or divorced, this factor does not weigh in favor of or against granting relief to petitioner. See Abelein v. Commissioner, T.C. Memo. 2004-274.

5.  Noncompliance With Federal Income Tax Laws in
    Subsequent Years

Petitioner and Mr. Sturges have filed Federal income tax returns and paid all taxes owed since 2000.  This factor does not weigh against granting relief to petitioner.  See Ewing v. Commissioner, 122 T.C. at 46-47.

B.  Factor Weighing in Favor of Granting Relief:  Attribution of Unpaid Liability

Respondent acknowledges that the liability for which relief is sought is attributable to Mr. Sturges.  This factor weighs in favor of granting petitioner relief for the unpaid liability.

C.  Factors Weighing Against Granting Relief

1.  Significant Benefit

Petitioner did not purchase expensive jewelry, drive a luxurious car, wear designer clothes, or take expensive vacations.  Petitioner and Mr. Sturges, however, withdrew $68,000 from the joint Paine Webber account in September 2000.  They used the money to pay for their daughter's tuition and some home improvements.  We think that $68,000 used for those purposes is a significant benefit to petitioner.  Consequently, this factor weighs against granting relief to petitioner.

2.  Knowledge or Reason To Know Factor

In the case of a liability that was reported but not paid, the fact that the requesting spouse did not know and had no reason to know that the liability would not be paid is a factor

weighing in favor of granting relief.  Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449.  By contrast, the fact that the requesting spouse knew or had reason to know that the reported liability would be unpaid is a strong factor weighing against relief.  Id. sec. 4.03(2)(b).

When petitioner signed the 2000 joint return in August 2001, $13,000 remained in the Paine Webber account.  Petitioner knew that she and Mr. Sturges did not have funds available at that time to pay the $141,302 tax liability shown as unpaid on the return.

We do not think that petitioner honestly believed that Mr. Sturges could pay the tax from proceeds from the Tiburon options. The section 83(b) election attached to the return states that Mr. Sturges paid $57,050.10 (30 cents per share) for 190,167 shares of Tiburon restricted stock on October 23, 2000.  Petitioner produced no evidence that the stock had increased in value since the purchase date.  Petitioner testified that by October 2001 Tiburon was failing and that in November 2001 Mr. Sturges left Tiburon.

Petitioner and Mr. Sturges attached to the return a statement signed by Mr. Sturges that he would be filing an offer-in-compromise.  Petitioner and Mr. Sturges filed their first offer-in-compromise offering to compromise their 2000 tax liability for $1 on October 22, 2001.  We conclude that

petitioner knew when she signed the 2000 joint return that the unpaid tax of $141,302 would not be paid.

This factor weighs against granting relief to petitioner.

### 3. Other Facts

We consider additional facts that affect the analysis of whether respondent abused his discretion in denying petitioner equitable relief under section 6015(f). We find it significant that petitioner and Mr. Sturges refinanced the residence on two occasions after they filed the joint return and submitted offers in compromise. They used the $265,000 proceeds from those loans to pay credit card debt and their daughter's tuition. We do not think that taxpayers should be allowed to favor other creditors over the Government and then claim that equity requires that they be relieved of their obligations to pay the debt to the Government. We find that using the proceeds from the refinancing of the residence to pay other creditors weighs heavily against granting petitioner the requested relief.

### D. Conclusion

After considering all of the facts and circumstances, we find that it would not be inequitable to hold petitioner liable for payment of the tax. We conclude that respondent did not abuse his discretion in denying petitioner equitable relief from joint and several liability under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.