T.C. Summary Opinion 2009-3

UNITED STATES TAX COURT

YORK T. HUANG, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14252-07S.                    Filed January 7, 2009.

York T. Huang, pro se.

<u>Brooke S. Laurie</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.[1]  Pursuant to
section 7463(b), the decision to be entered is not reviewable by

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the year in issue,
and all Rule references are to the Tax Court Rules of Practice
and Procedure.

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $17,706 in petitioner's 2004 Federal income tax and a $3,541.20 accuracy-related penalty.

After concessions,[2] the issues for decision are: (1) Whether petitioner is entitled to claimed miscellaneous itemized deductions; (2) whether petitioner is entitled to business expense deductions in amounts greater than respondent allowed; and (3) whether petitioner is liable for the penalty under section 6662.

## Background

Some of the facts have been stipulated, and we incorporate the stipulations and accompanying exhibits by this reference. Petitioner lived in California when he filed the petition.

In 2004 petitioner had a degree in business administration and worked full time for Sun Microsystems, Inc. (Sun), as an executive security specialist. Petitioner provided personal security for certain Sun executives. Minimum qualifications for

---

[2] Petitioner accepted respondent's determination as to unreported qualified dividends and capital gains and with respect to taxes deducted as itemized deductions.

Changes to petitioner's adjusted gross income resulted in adjustments to the amounts of self-employment tax owed and self-employment deduction allowed. Petitioner did not challenge these adjustments, and we will not address them further because they are purely computational.

this job included proficiency in first aid, defensive driving, martial arts, and the use of firearms. Sun also required petitioner to have a concealed weapons license and a U.S. passport and to maintain the skills necessary for the job.

Petitioner first obtained a license for his business, Archangel Risk Management and Security Consultant (Archangel), in 1997, and he continued that activity through 2004, the year in issue. Archangel provided two lines of service: (1) Business consulting from the perspective of risk management; and (2) personal, physical security for business people. From 1997 through 2004 Archangel's expenses consistently exceeded its income. Petitioner did not maintain any books or accounts for Archangel in 2004; rather, he measured his income by the sums he deposited in the bank, and he stored documentation for his expenses in a big box.

In 1992 petitioner purchased a three-bedroom house. In 2004 he sold the house in order to reduce his expenses and purchased a one-bedroom condominium (condo). Petitioner used his house and his condo for business, for storing supplies, and for maintaining his physical fitness and martial arts skills. He also lived in the house and the condo. Petitioner leased a BMW X5 sport utility vehicle (SUV) and purchased a Honda Civic, both of which he used for Archangel: the SUV for high-end clientele and the Honda sedan for clients demanding a lower profile.

Petitioner entertained individuals, including current and prospective Archangel clients, in attempts to solicit business. At times he also paid to entertain their children so that he could discuss business with his clients. Petitioner traveled to events where at-risk individuals could be found, hoping to be hired to provide security. Petitioner occasionally learned he was improperly attired on arriving for a protection detail and purchased appropriate clothing or footwear. Petitioner consolidated the insurance on his real estate, automobiles, boat, and possibly a motorcycle in order to purchase an additional umbrella policy that would provide blanket liability coverage, including coverage for his actions on behalf of Archangel. Petitioner used some proceeds from Archangel to contribute to an annuity for himself.

Petitioner prepared and timely filed his 2004 Federal income tax return. He reported his wages from working at Sun. On Schedule A, Itemized Deductions, petitioner claimed some deductions that are not at issue but also claimed $6,778 for unreimbursed job expenditures for uniforms, tools, and safety equipment.[3] On Schedule C, Profit or Loss From Business, petitioner reported gross receipts of $7,825, cost of goods sold

---

[3] After exceeding the 2-percent floor for miscellaneous itemized deductions, petitioner deducted $5,946 for job-related expenses.

of $225, gross income of $7,600, and total expenses of $60,249.
Petitioner claimed the following business expense deductions on
Schedule C:

| Expense description | Amount claimed |
| --- | --- |
| Advertising | $1,500 |
| Contract labor | 1,950 |
| Employee benefit programs | 2,000 |
| Insurance (other than health) | 8,190 |
| Legal and professional services | 7,245 |
| Office expenses | 5,411 |
| Vehicle leasing | 5,400 |
| Supplies | 8,262 |
| Taxes and licenses | 1,131 |
| Travel | 7,020 |
| 50% of meals and entertainment | 9,510 |
| Utilities | 2,630 |
| Total | 60,249 |

In a notice of deficiency for 2004, respondent allowed a
$293 deduction for cellular telephone expenses that petitioner
substantiated, in lieu of the $2,630 utilities expense petitioner
claimed; allowed an $88 deduction for substantiated taxes and
licenses, rather than the $1,131 petitioner claimed; disallowed
the remaining Schedule C deductions; and disallowed in full
petitioner's claimed job-expense deduction.

In a timely petition, petitioner alleged that "All the
disallowed expenses are ordinary and necessary business cost
[sic] that are supported with receipts and are all at risk as the
investment for the business."

At trial respondent asserted that petitioner failed to
maintain adequate records of Archangel's income and expenses and

that many of petitioner's job-related expenses and Schedule C expenses were not only inadequately substantiated but also nondeductible personal, family, and living expenses.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that these determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with its requirements. Petitioner therefore bears the burden of proof.

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records sufficient to enable the Commissioner to determine their correct tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Such records must substantiate both the amount and purpose of the claimed deductions. Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

When a taxpayer establishes that he has incurred a deductible expense but is unable to substantiate the exact

amount, we are generally permitted to estimate the deductible amount.  <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930).  To apply the <u>Cohan</u> rule, however, the Court must have a reasonable basis upon which to make an estimate.  <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).

Congress overrode the <u>Cohan</u> rule with section 274(d) which requires strict substantiation for certain categories of expenses; in the absence of evidence demonstrating the exact amount of those expenses, deductions are to be disallowed entirely.  <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).  Expenses subject to section 274(d) include travel and meal expenses, as well as expenses for listed property, such as passenger automobiles, computers, and cellular telephones.  Secs. 274(d), 280F(d)(4). The taxpayer must substantiate the amount, time, place, and business purpose of these expenditures and must provide adequate records or sufficient evidence to corroborate his own statement. See sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

I.  <u>Unreimbursed Employee Business Expenses</u>

Section 162 allows deductions for all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Performing services as an employee constitutes a trade or business.  <u>Primuth v.</u>

Commissioner, 54 T.C. 374, 377-378 (1970).  Those expenses that are (1) ordinary and necessary to the taxpayer's business and (2) paid or incurred in a given year are deductible that year.  Sec. 162(a); see sec. 1.162-17(a), Income Tax Regs.  However, personal, living, or family expenses are not deductible.  See secs. 162(a), 262(a); sec. 1.162-17(a), Income Tax Regs.

On his Schedule A for 2004, petitioner described his job expenses as "Uniform, tool, safety equipment".

Where business clothes are suitable for general wear, their cost is typically not deductible.  However, where custom and usage forbid wearing a uniform when off duty, deduction is allowed.  The cost of maintaining clothes for work is deductible when the purchase price was deductible.  Hynes v. Commissioner, 74 T.C. 1266, 1290 (1980).  Petitioner did not introduce any testimony or other evidence proving that the clothing he purchased for work was not suitable for everyday wear or that Sun required him to wear anything other than normal business attire. Accordingly, petitioner is not entitled to deduct his expenses for buying or maintaining the clothes he wore when working for Sun.

Most of the other receipts petitioner submitted in support of his unreimbursed employee business expenses appear completely

unrelated to his work for Sun.[4]  The remaining receipts indicate that he went to firing ranges, rented range time, and purchased flashlights, knives, ammunition, and possibly firearms.  He did not introduce any evidence that Sun required him to purchase these items, however, nor any evidence that Sun did not provide him with the equipment necessary to perform his job.  Although the record contains some information regarding Sun's policy with respect to reimbursement for Sun-related travel expenses, petitioner did not provide any evidence about whether Sun would reimburse him for purchasing tools and equipment or for maintaining his job-related skills, nor did he testify that he sought reimbursement.  A taxpayer's failure to seek reimbursement from his employer prevents him from deducting those expenses as unreimbursed employee business expenses.  Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Lucas v. Commissioner, 79 T.C. 1, 7 (1982).

Respondent's determination disallowing petitioner's job-related expenses is sustained.

II.  Business Expenses

Petitioner began Archangel in 1997.  The expenses from this activity exceeded the gross receipts every year from 1997 through

---

[4] Petitioner submitted myriad receipts but generally failed to show how any of the documented expenses were business related. Clear documentation of what each expenditure purchased and how each purchase was an ordinary and necessary business expense does not appear in the record.

the year in issue. Petitioner admitted at trial that he did not keep track of Archangel's income during the year; rather, he computed his income by reviewing his bank deposits. He did, however, place all his expense receipts in a big box.

A. <u>Advertising Expenses</u>

Petitioner claimed a $1,500 advertising expense deduction for Archangel in 2004. He introduced a credit card statement showing a $1,500 charge to Clear Channel Radio and a computer-screen printout of an April 2004 e-mail titled "Summary Invoice". This printout lists the "Bill To" party as Sugar's Magazine (Sugar), and addresses the invoice to the attention of petitioner and another individual but at a mailing address that does not match either of petitioner's residences (which were also Archangel's addresses). The printout states "2004 billing: Net amount paid: $1,500" and reports that Sugar purchased fifty 60-second commercial announcements between April 14 and 25, 2004, on KYLD Wild 94.9FM in San Francisco. Petitioner offered vague testimony that Sugar purchased bulk advertising and he purchased advertising at a discount from Sugar. However, the evidence petitioner introduced indicates that Sugar bought $1,500 of radio commercials. It does not show that petitioner bought any of this time for Archangel or that the announcements were for Archangel rather than Sugar or some other party. Respondent's determination disallowing this deduction is sustained.

B.  Contract Labor

Petitioner deducted $1,950 for contract labor expenses but did not introduce any evidence or provide any testimony proving that he actually incurred any contract labor expenses. Respondent's determination is sustained.

C.  Employee Benefit Programs

A taxpayer, including the owner of an unincorporated business, is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, sec. 162(a), including any amount paid to an employee pursuant to an employee benefit plan, sec. 162(a)(1); sec. 1.162-10, Income Tax Regs.

Petitioner introduced evidence showing that he paid $150 per month for part of 2002 and part of 2004 into a "privileged assets annuity" with American Partners Life Insurance Co.  He claimed an expense of $2,000 for employee benefit programs.[5]

Section 162, however, does not allow deductions for amounts which may be used to provide benefits under an annuity plan. Sec. 1.162-10(a), (c), Income Tax Regs.  Rather, such contributions are controlled by section 404.  Id.  However,

_____

[5] It is not clear why petitioner introduced evidence relating to 2002, considering that only tax year 2004 is at issue.  We note that even if petitioner contributed $150 monthly to the annuity for all of 2004, as his evidence seems to ask us to conclude, the total for 2004 would be $1,800, not the $2,000 petitioner claimed.  No Code section authorizes petitioner to round these expenditures up before claiming a deduction.

petitioner did not introduce any evidence that the annuity he contributed to was a retirement annuity and part of a qualified plan, as required by section 404(a)(2).

Petitioner is not entitled to deduct any amount for employee benefit plans for 2004.

D. Insurance

Petitioner claimed an expense deduction of $8,190 for insurance expenditures in 2004. Petitioner testified that business insurance is particularly expensive whenever firearms are involved and that obtaining vehicle insurance for this type of business is difficult. As a result, petitioner alleged that he was required to place all of his insurance (auto, home, boat, commercial) with one company so that he could purchase a special umbrella policy covering his use of any of his property in the business, including two cars, both residences, his boat, and possibly a motorcycle. It appears that petitioner claimed all of his insurance expenses (for both cars, both residences, his boat, etc.) as business expenses because of his need to consolidate policies in order to purchase the umbrella coverage. Petitioner also claimed that he used both automobiles only for Archangel business, because he lived across the street from a mall and because Sun provided him a company vehicle to use for his full-time job.

While there is no dispute that petitioner incurred insurance expenses in 2004, respondent argues that these expenditures are not all ordinary and necessary business expenses and that petitioner is attempting to deduct personal and living expenses as business expenses. Petitioner did not introduce any evidence to show that he used his boat for business, nor did he justify deducting real estate insurance or substantiate any business use of his automobiles. Furthermore, in the absence of corroborating evidence, we are not required to accept, and do not accept, petitioner's self-serving testimony that he used his automobiles exclusively for Archangel business.[6] See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Madden v. Commissioner, T.C. Memo. 2006-4.

Petitioner asserts that because he used most of both of his residences for Archangel he may deduct the costs to insure his properties. Yet he has not claimed any home office deduction.

Finally, the documentation petitioner introduced in support of his insurance expenses indicates that he paid between $27 and $28 to Farmers Insurance for each of 3 months in 2004 for a

---

[6] Petitioner did not claim any deduction for car and truck expenses for 2004.

policy listed on three bills as "Commercial". While this policy may be some form of business insurance, petitioner did not provide any details of the coverage he purchased.

On the basis of the entire record, we are satisfied that petitioner claimed a plethora of personal insurance items as business expenses. Under these circumstances, we are unwilling to assume that the unexplained commercial line item on three bills was business insurance, and we decline to estimate an annual deduction for insurance for Archangel.

Respondent's determination that petitioner is not entitled to a deduction for insurance is sustained.

E. Legal and Professional Services

Petitioner claimed a business expense deduction for $7,245 for legal and professional services. He presented some vague testimony that when his business consulting and risk management advice to a business owner proved inaccurate, Archangel had to pay for legal services to resolve the problem for its client. Petitioner then explained inconsistently that Archangel would pass this cost on to its clients and later that Archangel would not be paid if the legal challenge failed.

Petitioner's documentation supporting Archangel's legal expenses consisted of copies of some bank statements with mostly illegible handwritten notations; one statement with the words "Attorney Fernando Hernandez" below the line reporting a $2,500

check; and a copy of that check for $2,500 payable to and endorsed by Fernando Hernandez, but with a notation in the memo field of the check that appears to refer to "Sugar's U.S. Landlord".  This documentation does not support any deduction for legal expenses incurred by Archangel in 2004.

Petitioner testified that maintaining his protection skills required him to take regular refresher courses.  He included receipts showing $270 paid for firearms, baton, and chemical agents training, and we allow this amount as a professional expense.  Otherwise, respondent's determination is sustained.

F.  Office Expenses

As indicated, petitioner did not claim any home office deduction, but he did deduct $5,411 as office expenses in 2004. Petitioner's office expense documentation included receipts for parking, tolls, his AAA membership, and canceled checks reflecting unspecified payments to the California Department of Motor Vehicles.  These items might be for car and truck expenses (but petitioner did not deduct any car and truck expenses on Schedule C) or for travel expenses.  Critically, these documents do not identify any business purpose for the expenditures. Likewise, the miscellaneous receipts submitted ostensibly to support Archangel's office expenses do not bear any indication of what legitimate business expenses they represent.  Petitioner introduced an undated bill for $100 from the Fictitious Business

Name Renewal Service for the renewal of Archangel's business name but did not introduce any documents to show he paid that bill.[7] Petitioner also included a receipt from the John Elway Foundation Auction which appears to document his purchase of five signed items of sports and music memorabilia for $1,350.64. This receipt appears to be from September 2003 and does not indicate any business purpose for this expenditure.

Respondent's determination disallowing petitioner's claimed office expense deduction is sustained.

G. Vehicle Leasing

Petitioner submitted a (largely illegible) copy of what the parties describe as petitioner's lease agreement for his SUV. Petitioner claimed a $5,400 deduction for vehicle rental, suggesting that the lease payment for his 2002 SUV was $450 per month in 2004. Passenger automobiles are listed property, and related expenses must be strictly substantiated or they may not be deducted. Secs. 274(d), 280F(d)(4). Petitioner did not provide any substantiation of the amount, time, place, and business purpose of the use of his SUV. Thus, even if the record supported his paying $450 monthly lease payments, petitioner is

---

[7] Petitioner also submitted two documents from April 2004: One a handwritten receipt for a payment of $25 allegedly for a fictitious business name, the other a printed receipt for $37 for a fictitious business name. Neither receipt indicates what fictitious name it paid for or whether the fee covered an initial registration or a renewal. This is not reliable evidence that would support our estimating this expense.

not entitled to deduct his cost to lease this passenger automobile because he failed to maintain or provide adequate business records.

H. <u>Supplies</u>

Petitioner claimed a deduction for spending $8,262 on supplies for Archangel. Petitioner's documentation supporting his supplies deduction includes several documents regarding the installation of fencing, apparently at the house petitioner bought in 1992 and sold in 2004. However, some of the documents are in another person's name, with an address different from petitioner's. Petitioner also included a receipt for a garage-door opener. The business purposes of these expenses is unclear. In any event, because fencing and garage door openers have useful lives substantially beyond the year of installation, these are capital expenditures, see sec. 1.263(a)-2(a), Income Tax Regs., and expenses that would otherwise be deductible under section 162 are not currently deductible if they are capital, secs. 261, 263(a).

Petitioner's remaining supplies receipts are predominantly for the purchase of flowers, live Maine lobsters, and alcohol. Petitioner did not explain or document any business purpose for these expenses or identify the persons involved.

Petitioner has not substantiated any legitimate supplies expenses. Respondent's determination is sustained.

I.   <u>Taxes and Licenses</u>

Petitioner claimed $1,131 in taxes and licenses for 2004. Respondent allowed a deduction of $88 for the renewal of petitioner's firearms license.  With his office expense documentation, petitioner substantiated paying $150 to the City of San Jose for business tax and paying $35 to the California Bureau of Security and Investigative Services to renew his security guard credentials.[8]

We allow petitioner a deduction of $185 for Archangel's expenses for taxes and licenses in addition to the $88 allowed by respondent.  Otherwise, respondent's determination is sustained.

J.   <u>Meals and Entertainment</u>

The parties stipulated that petitioner expended $8,753 for meals and entertainment expenses in 2004.  Petitioner claimed business meals and entertainment expenses of $19,021, of which he deducted 50 percent, $9,511.  Petitioner's documentation included a number of movie ticket stubs and hundreds of receipts for eating and drinking at restaurants and bars.  Petitioner did not provide any evidence of the persons entertained or the business purpose of the meals, drinks, or movies, and the receipts do not include any legible record of petitioner's recording this information.  Meals and entertainment expenses are subject to the

---

[8] The remaining documents petitioner submitted to substantiate his expenditures for taxes and licenses appear to support his real estate taxes, itemized on Schedule A.

strict substantiation requirements of section 274(d).  Petitioner is not entitled to any deduction for meals and entertainment because of his failure to maintain adequate records of the people invited and entertained and of the business purpose of these expenditures.

K.  Utilities

Petitioner claimed business expense deductions for utilities for Archangel amounting to $2,630.  Respondent allowed $293 in substantiated cellular telephone expenses.  Petitioner's evidence includes water, electric, gas, cable television, telephone, and cellular telephone bills, together with assessment statements apparently from his condominium association.  Most of the bills are in petitioner's name, but some appear to be in the name of one or more relatives at petitioner's residential address.  None is in the name of Archangel.

Petitioner argues that he is entitled to deduct most of his residential expenses (such as repairs, improvements, utilities, and insurance) because his residences were used mostly for business.  As noted, he did not claim any home office deduction in 2004.  Petitioner alleged that he used 85 percent of his three-bedroom house exclusively for Archangel.  This is implausible.  He testified that when he moved himself and Archangel into a one-bedroom condo, he continued to use 85 percent of his new residence exclusively for Archangel; i.e., his

living needs occupied an even smaller space.  This is simply not credible.[9]  Petitioner alleges that most of his living space was converted to a training area for self-defense practice and that most of the bedroom space was occupied by firearms storage and client paperwork.  He admitted that his living room continued to hold normal furniture, including a couch.  Petitioner also testified that the sole purpose of cable television service was to enable him to monitor news and events and gather information on potential threats and possible business opportunities.

Respondent asserts that petitioner attempted to claim many personal, family, and living expenditures as deductible business expenses.  Petitioner has not introduced any evidence to convince us that respondent is incorrect, and he has not shown that he is entitled to these deductions.[10]  Respondent's determination is sustained.

---

[9] The fact that some bills were in the name of one or more of petitioner's relatives suggests that petitioner may not have been the sole occupant of these residences and casts further doubt on petitioner's allegation that nearly all of each residence was used exclusively for Archangel.

[10] Petitioner's complaint that respondent is being unfair and unreasonable in allowing only a few hundred dollars in business expenses misses the point.  Respondent allowed those expenses that petitioner proved he incurred and that he demonstrated were legitimate business expenses.  Petitioner's failure to maintain accounting records for Archangel and his failure to record and document the specific business purpose of each of his expenditures compelled respondent's disallowance of the majority of petitioner's deductions.

L. <u>Travel</u>

Although the record includes some documents potentially related to petitioner's claimed business travel in 2004, petitioner did not provide any explanation, and the documents do not include any description of any business purpose for any of this travel. Petitioner's vague testimony and this meager evidence fail to satisfy the strict substantiation required by section 274(d). Respondent's determination is sustained.

III. <u>Accuracy-Related Penalty</u>

The Commissioner bears the burden of production and must produce sufficient evidence showing that the imposition of any penalty is appropriate in a particular case. Sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. at 446. Once the Commissioner meets this burden, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); <u>Higbee v. Commissioner</u>, <u>supra</u> at 447. To the extent the taxpayer shows there was reasonable cause for an underpayment and that he acted in good faith, section 6664(c)(1) prohibits the imposition of a penalty under section 6662.

Respondent determined a 20-percent penalty under section 6662(a) on the underpayment of tax resulting from petitioner's disallowed itemized and business expense deductions. Respondent asserts that the underpayment is attributable to negligence or disregard of rules or regulations or to a substantial

understatement of income tax. See sec. 6662(b)(1) and (2). For the purpose of section 6662, negligence includes any failure to make a reasonable attempt to comply with tax laws, and disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). A substantial understatement of income tax is defined as an understatement exceeding the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1).

Respondent satisfied his burden of production under section 7491(c) because the record shows that petitioner substantially understated his income tax for the year in issue. See sec. 6662(d)(1)(A)(ii); Higbee v. Commissioner, supra at 446. Furthermore, a review of this record reflects that petitioner claimed substantial deductions for which he apparently maintained no business records beyond storing receipts in a big box.[11] There is little dispute that petitioner paid the expenses claimed, yet most of the claimed deductions for alcohol, boat insurance, clothes, contributions to his personal annuity, flowers, signed memorabilia, and utilities, for example, are clearly for nondeductible personal items. On the basis of the entire record, we conclude that petitioner did not act with reasonable cause or

---

[11] Petitioner's failure to maintain books and records is particularly significant in the light of his claim to holding a degree in business administration and his allegedly providing business consulting services to Archangel's clients.

exercise good faith in claiming these deductions and that he is liable for the penalty under section 6662(a).

To reflect our disposition of the issues,

<u>Decision will be entered under Rule 155</u>.